**CITY OF SEAGOVILLE and Kimberly Bustos, Appellants**

v.

**David LYTLE, Appellee.**

No. 05–06–01016–CV.

Court of Appeals of Texas, Dallas.

June 13, 2007.

Robert E. Hager, Karen S. Nelson, Peter G. Smith, Nichols Jackson Dillard Hager & Smith, L.L.P., Dallas, TX, for Appellant.

John Weddle, Law Offices of John Weddle, Garland, TX, for Appellee.

Before Justices MORRIS, LANG, and LANG–MIERS.

## OPINION

Opinion by Justice LANG.

In this interlocutory appeal, the City of Seagoville and Kimberly Bustos appeal the

trial court's orders denying their plea to the jurisdiction and motions for summary judgment.

Seagoville raises three issues, arguing the trial court erred when it denied its plea to the jurisdiction because: (1) it is immune from suit; (2) Lytle's claims were moot; and (3) Lytle lacked standing. Bustos raises two issues on appeal, arguing the trial court erred when it: (1) denied her plea to the jurisdiction and motion for summary judgment because Lytle's claims were quasi-judicial and absolute immunity attaches; and (2) refused to grant her motion for summary judgment because she is immune from liability.

We conclude the trial court erred when it denied Seagoville's plea to the jurisdiction with respect to Lytle's claims for back pay and claims for unspecified, back benefits, to the extent the claims for the unspecified, back benefits seek a money judgment, because those claims are barred by governmental immunity. Also, we conclude the trial court erred when it denied Bustos's motion for traditional summary judgment because she has official immunity. The trial court's orders are reversed and rendered, in part, and affirmed, in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Captain Lytle and Sergeant Bustos were both employed by the City of Seagoville Police Department. On July 3, 2003, Sgt. Bustos filed a complaint against Capt. Lytle alleging violations of the City of Seagoville's policy and procedures manual. Specifically, Sgt. Bustos claimed Capt. Lytle violated policy number 517 by transmitting "offensive and sometimes pornographic images" by email and policy number 703, which prohibits sexual and other unlawful harassment. *See* Seagoville, Tex., Policy and Procedures Manual nos. 517, 703 (eff. May 1, 2003).[1]

The Seagoville Chief of Police, I.D. Smith, requested the Assistant Chief of Police for the Hutchins Police Department, David Landers, to conduct an internal affairs investigation. In his investiga-

---

1. Policy numbers 517 and 703 of the Seagoville Policy and Procedures Manual state, in part:

   **517 Internet Usage**
   Data that is composed, transmitted, accessed, or received via the Internet must not contain content that could be considered discriminatory, offensive, obscene, threatening, harassing, intimidating, or disruptive to any employee or other person. Examples of unacceptable content may include, but are not limited to, sexual comments or images, racial slurs, gender-specific comments, or any other comments or images that could reasonably offend someone on the basis of race, age, sex, religious or political beliefs, national origin, disability, sexual orientation, or any other characteristic protected by law....
   Abuse of the Internet access provided by [Seagoville] in violation of law or [Seagoville] policies will result in disciplinary action, up to and including termination of employment. Employees may also be held

   personally liable for any violations of this policy....
   **703 Sexual and Other Unlawful Harassment**
   [Seagoville] is committed to providing a work environment that is free from all forms of discrimination and conduct that can be considered harassing, coercive, or disruptive, including sexual harassment. Actions, words, jokes, or comments based on an individual's sex, race, color, national origin, age, religion, disability, or any other legally protected characteristic will not be tolerated....
   Any supervisor or manager who becomes aware of possible sexual or other unlawful harassment must immediately advise the Human Resources Department or any member of management so it can be investigated in a timely and confidential manner. Anyone engaging in sexual or other unlawful harassment will be subject to disciplinary action, up to an including termination of employment.

tion report, Asst. Chief Landers noted: (1) he discussed with Capt. Lytle the fact that, although he identified the allegation as "sexual harassment" in a document relating to the investigation, it was a typographical error and the allegation was "harassing conduct"; and (2) Capt. Lytle stated he had not received a copy of Sgt. Bustos's complaint and Asst. Chief Landers responded he would like Lytle to just talk and give his side of the story. Asst. Chief Landers concluded Capt. Lytle sent inappropriate emails. Also, he concluded Sgt. Bustos and Capt. Lytle "had a friendship in the past that was beyond work, [Sgt. Bustos] now doesn't want to continue that type of friendship but may not have communicated it to [Capt. Lytle] in a way that he understood." Asst. Chief Landers recommended that Capt. Lytle: (1) receive a formal written reprimand placed in his personnel file; (2) continue working, but not as Sgt. Bustos's immediate supervisor; (3) no longer work in the same office area as Sgt. Bustos; and (4) write a formal apology to Sgt. Bustos.

On September 11, 2003, Chief Smith sent Capt. Lytle a letter advising him the department was sustaining both the misuse of the internet and "harassing conduct" charges against him. Also, the letter advised Capt. Lytle of an additional charge against him for violating policy number 516. *See* Seagoville, Tex., Policy and Procedures Manual no. 516.[2] Further, Chief Smith's letter requested a response from Capt. Lytle. On September 14, 2003, after reviewing Capt. Lytle's response, Chief Smith sent a second letter informing Capt. Lytle that his employment with the Seagoville Police Department was terminated because his conduct violated the policies prohibiting "sexual harassment" and improper use of the internet and email. *See* Seagoville, Tex., Charter art. VIII, § 4 (1991) (city manager may appoint head of department to remove employees); Seagoville, Tex., Code of Ordinances ch. 16, art. I, § 16–3 (1973) (police officer subject to dismissal for misconduct in office). Lytle appealed his termination to the Interim City Manager, Denny Wheat. *See* Seagoville, Tex., Charter art. VIII, § 4 (1991) (if employed for at least one year then, on request, terminated employee has right to hearing before city manager). After hearing the appeal, Wheat concluded the charges against Lytle for violating the internet usage policy were not conclusively demonstrated. However, Wheat found that Lytle violated the "sexual harassment policy." As a result, Wheat upheld the decision of Chief Smith to terminate Lytle.

On February 4, 2004, Lytle sued Seagoville, Sgt. Bustos, and Wheat as well as members of the Seagoville City Council, including Sid Sexton, Malcolm Thomas, John Cunningham, and James Suddeth. On February 23, 2004, the defendants filed their plea to the jurisdiction, general denial, verified denials, and affirmative defenses, including governmental immunity and official immunity.

On August 25, 2005, Lytle filed his second amended petition. In that petition, Lytle sued Sgt. Bustos for intentional infliction of emotional distress, libel, and slander, and sought damages, exemplary damages, and attorneys' fees. Also, Lytle brought claims for declaratory, mandamus,

---

**2.** Policy number 516 of the Seagoville Policy and Procedures Manual states, in part:

    **516 Computer and Email Usage**

[Seagoville] strives to maintain a workplace free of harassment and sensitive to the diversity of its employees. Therefore, [Seago-ville] prohibits the use of computers and the e-mail system in ways that are disruptive, offensive to others, or harmful to morale.... Employees who violate this policy will be subject to disciplinary action, up to and including termination of employment.

or injunctive relief based on his allegations that: (1) Seagoville violated sections 614.022 and 614.023 of the Texas Government Code;[3] and (2) Seagoville, Wheat, Sexton, Thomas, Cunningham, and Suddeth violated article VIII, section 4 of the Seagoville City Charter.[4] For these claims, Lytle requested the trial court to require Seagoville to withdraw its disciplinary action, reinstate him to his original position and pay grade, and restore his back pay and benefits. On September 17, 2005, the trial court granted partial summary judgment dismissing Lytle's claims against Wheat, Sexton, Thomas, Cunningham, and Suddeth. However, it permitted Lytle to pursue his government code and city charter claims against Seagoville.

On June 20, 2006, Seagoville and Sgt. Bustos filed a plea to the jurisdiction and motion for traditional summary judgment on the basis of immunity, and a motion for no-evidence summary judgment. On July 18, 2006, the trial court denied the plea to the jurisdiction and the motions for traditional and no-evidence summary judgment.

## II. CITY OF SEAGOVILLE'S IMMUNITY FROM SUIT

In the first issue, Seagoville argues the trial court erred when it denied Seagoville's plea to the jurisdiction because it is immune from suit. Seagoville argues that Lytle's claims are barred by governmental immunity from suit because: (1) Lytle's petition states he is suing Seagoville pursuant to common law; (2) his claims are an attempt to sue for money damages; and (3) Lytle's petition has not cited to any legislative waiver of immunity. Lytle responds that any money awarded on his claims would be the result of his reinstatement, rather than money damages.

### A. Standard of Review

Whether a trial court has subject matter jurisdiction is a matter of law. *See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004); *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002). Accordingly, an appellate court reviews a challenge to the trial court's subject matter jurisdiction de novo. *See Miranda,* 133 S.W.3d at 228; *It–Davy,* 74 S.W.3d at

---

3. Section 614.022 of the Texas Government Code provides that in order for a complaint against a police officer to be considered by the head of the local law enforcement agency, the complaint must be: (1) in writing; and (2) signed by the person making the complaint. *See* Tex. Gov't Code Ann. § 614.022 (Vernon Supp.2006). Section 614.023 provides that a copy of the complaint shall be given to the officer within a reasonable time after the complaint is filed and disciplinary action may not be taken against the officer unless a copy of the signed complaint is given to the officer. *See id.* § 614.023(a), (b). *But see* Seagoville Police Department, *Personnel Complaints,* Gen. Order No. 95–050(C)(3) (eff.Nov. 19, 1992) (An employee will not be permitted to review, nor will he be given a copy of the complaint or the complainant's statement. After the employee submits his written response as required in the notification of a complaint, the employee may request in writing to review or obtain a copy of the com-

plaint. The chief will determine whether to approve or deny that request). In addition, the officer may not be suspended indefinitely or terminated from his employment based on the subject matter of the complaint unless: (1) the complaint is investigated; and (2) there is evidence to prove the allegation of misconduct. *See id.* § 614.023(c).

4. Article VIII, section 4 of the Seagoville City Charter states, in part:

Neither the City Council nor any of its committees or members shall direct or request the appointment of any person to, or his removal from, office by the City Manager or any of his subordinates; or except as is or may be otherwise provided under the terms of this section, in any manner take part in the appointment or removal of officers and employees in the administrative service of the City.

855. In performing this review, an appellate court does not look to the merits of the case, but considers only the pleadings and evidence relevant to the jurisdictional inquiry. *See Miranda,* 133 S.W.3d at 227; *County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex.2002).

### B. Applicable Law

▬▬ A plea to the jurisdiction is a dilatory plea. *See Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000). Its purpose is "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland,* 34 S.W.3d at 554. A plea to the jurisdiction contests a trial court's subject matter jurisdiction. *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999). The purpose of the plea is not to force the plaintiff to preview their case on the merits, but to establish a reason why the merits of the plaintiff's claims should never be reached. *See Brown,* 80 S.W.3d at 555; *Bland,* 34 S.W.3d at 554.

▬▬ When a plea to the jurisdiction challenges the pleadings, the trial court must construe the pleadings liberally in favor of the pleader. *Miranda,* 133 S.W.3d at 226. If the pleadings do not allege facts sufficient to affirmatively demonstrate jurisdiction, but the pleading defects are curable by amendment, the issue is one of pleading sufficiency and the pleader should be afforded an opportunity to amend. *Id.* at 226–27. However, when a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court must consider the relevant evidence submitted by the parties when necessary to resolve the jurisdictional issue. *Id.* at 227. If the evidence creates a fact question regarding the jurisdictional issue, the

trial court must deny the plea to the jurisdiction and submit the issue to the factfinder. *Id.* at 227–28. Conversely, if the evidence is undisputed or fails to raise a fact issue, the trial court should rule on the plea to the jurisdiction as a matter of law. *Id.* at 228. This standard generally mirrors that of a summary judgment. *Id.*

▬▬ Governmental immunity deprives a trial court of subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Id.* at 225–26. Governmental immunity protects political subdivisions of the State, including counties, cities, and school districts. *See Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 694 n. 3 (Tex.2003). Under the doctrine of governmental immunity, a unit of government may not be sued without the express consent of the legislature. *See City of Houston v. Houston Firefighters' Relief & Retirement Fund,* 196 S.W.3d 271, 277 (Tex.App.-Houston [1st Dist.] 2006, no pet.). In the absence of a waiver of governmental immunity, a court has no subject matter jurisdiction to entertain a suit against a governmental unit. *See Jones,* 8 S.W.3d at 638. Generally, governmental units possess both immunity from suit and immunity from liability. *See Catalina Dev., Inc. v. County of El Paso,* 121 S.W.3d 704, 705 (Tex.2003); *It–Davy,* 74 S.W.3d at 853. Also, governmental immunity serves to protect governmental units from lawsuits for money damages. *Houston Firefighters' Relief,* 196 S.W.3d at 277.

### C. Lytle's Pleadings

Before determining whether Lytle's claims are barred by governmental immunity, we must first identify the nature of those claims.[5] We liberally construe Ly-

---

**5.** Lytle's second amended petition states, in pertinent part, these claims against Seago- ville:

tle's claims to seek: (1) declaratory relief regarding whether Seagoville complied with sections 614.022 and 614.023 of the Texas Government Code and article VIII, section 4 of the Seagoville City Charter, and withdrawal of the disciplinary action, reinstatement to his original position and pay grade, and restoration of his back pay and unspecified, back benefits; (2) on a finding of noncompliance with either the Texas Government Code or the Seagoville City Charter, mandamus relief requiring Seagoville to withdraw the disciplinary action, to reinstate Lytle to his original position and pay grade, and to restore his back pay and unspecified, back benefits, which he would have received, but for Seagoville's noncompliance; and (3) injunctive relief to enforce the relief requested in his declaratory judgment action and petition for a writ of mandamus. *See Bell v, City of Grand Prairie,* 221 S.W.3d 317, 324-325 (Tex.App.-Dallas, 2007, no pet. h.) (op. on reh'g) (liberally construing plaintiff's petition); *City of Waco v. Bittle,* 167 S.W.3d 20, 26 (Tex.App.-Waco 2005, pet. denied) (liberally construing plaintiff's allegations).

Next, we must consider whether Seagoville's governmental immunity from suit bars each of these claims.

**Determination of rights under Texas Government Code**
**Annotated sections 614.022 and 614.023**
19. [Lytle] seeks injunctive relief, a writ of mandamus, or in the alternative, pursuant to the provisions of Chapter 37 of the Civil Practice and Remedies Code and Article 5, Section 8, of the Texas Constitution [Lytle] requests that the trial court require the City of Seagoville to withdraw the disciplinary action taken against him and to restore his back pay and benefits as Captain in the Seagoville Police Department as a result of the violation by the City of Seagoville and/or its employees and/or office holders of Texas Government Code Annotated Sections 614.022 and 614.023 by failing to provide [Lytle] with a copy of the complaint(s) against him within a reasonable time.
**Violation of City Charter**
20. [Lytle] was advised that the City Attorney informed his attorney that the hearing before the City Manager would have to be rescheduled to allow the City Council members to see the information he had provided for the hearing in order for the City Attorney to verify that the decision to terminate him was still what *they* wanted to do. Article VIII, Section 4 of the City of Seagoville Charter states.... "Neither the Council nor any of its committees or members shall direct or request the appointment of any person to, or his removal from, office by the City Manager or any of his subordinates; or except as is or may be otherwise provided under the terms of this section, in any manner take part in the appointment or removal of officers and employees in the adminis-

trative service of the City." Essentially, the City Charter specifically prohibits the City Council from becoming involved in disciplinary actions specifically in actions involving the "removal" of an employee. This same section specifically makes the City Manager the individual to hear and determine appeals of a decision to terminate employment. [Lytle's] termination was unlawful under the City of Seagoville City Charter Article VIII, Section 4. [Lytle] requests that the court require the City of Seagoville to withdraw the disciplinary action taken against him and to restore his back pay and benefits as Captain in the Seagoville Police Department as a result of the unlawful action of the Seagoville City Council.

\* \* \* \* \* \* \*

**Specific Relief**
23. [Lytle] seeks the following specific relief which arises out of the actions and/or omissions of [Seagoville] as described herein above:
a. Reinstate [Lytle] to the position and pay grade which [Lytle] held but for the unlawful employment actions of [Seagoville] with all back pay and benefits.

\* \* \* \* \* \* \*

**Prayer**
**WHEREFORE, PREMISES CONSIDERED ....**
Specifically, [Lytle] seeks to be reinstated to his former position with all back pay and benefits.
(emphasis in orig.).

### 1. Declaratory Judgment

First, we must consider Lytle's claim seeking a declaratory judgment. Under the Uniform Declaratory Judgments Act, persons "affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM.CODE ANN. § 37.004 (Vernon 1997). Certain declaratory judgment actions do not implicate the doctrines of sovereign or governmental immunity. *See, e.g., Tex. Educ. Agency v. Leeper,* 893 S.W.2d 432, 446 (Tex.1994); *City of Dallas v. Martin,* 214 S.W.3d 638, 644 (Tex.App.-Dallas 2006, pet. filed) (op. on reh'g) (no governmental immunity in suits to construe legislation).

Texas courts distinguish suits to determine a party's right against a governmental unit from a suit seeking damages. *See Houston Firefighters' Relief,* 196 S.W.3d at 277. A declaratory judgment action against the government seeking a declaration of a party's rights and status under a statute is not barred by governmental immunity. *See It–Davy,* 74 S.W.3d at 859–60; *Bell,* 221 S.W.3d 317, 324. A party can maintain a suit to determine its rights without legislative permission. *See Houston Firefighters' Relief,* 196 S.W.3d at 277. However, governmental immunity bars suits for declaratory judgment seeking a declaration of the government's liability for money damages. *See It–Davy,* 74 S.W.3d at 859–60; *Bell,* 221 S.W.3d 317, 324. A party cannot circumvent the doctrine of governmental immunity by characterizing a suit for money damages, such as a contract dispute, as a declaratory judgment action. *See It–*

*Davy,* 74 S.W.3d at 856; *City of Dallas v. Albert,* 214 S.W.3d 631, 637 (Tex.App.-Dallas 2006, pet. filed) (op. on reh'g); *Martin,* 214 S.W.3d at 644; *Houston Firefighters' Relief,* 196 S.W.3d at 277. When the only injury alleged is in the past and the only "plausible remedy" is an award of money damages, the declaratory judgment claim is barred. *See City of Houston v. Williams,* 216 S.W.3d 827, 829 (Tex.2007) (per curiam); *Bell,* 221 S.W.3d 317, 324. The Texas Supreme Court and several courts of appeals in Texas have held a declaratory judgment action seeking back pay and benefits is a suit for money damages barred by governmental immunity absent legislative consent. *See Williams,* 216 S.W.3d at 829 (back pay); *Albert,* 214 S.W.3d at 637 (back pay and benefits); *Martin,* 214 S.W.3d at 644 (back pay and benefits); *Nueces County v. Ferguson,* 97 S.W.3d 205, 220–21 & n. 21 (Tex.App.-Corpus Christi 2002, no pet.) (back pay); *City of San Benito v. Ebarb,* 88 S.W.3d 711, 722–23 & n. 13 (Tex.App.-Corpus Christi 2002, no pet.) (back pay); *Haynes v. City of Beaumont,* 35 S.W.3d 166, 182 (Tex.App.-Texarkana 2000, no pet.) (reinstatement, back pay and benefits).

We conclude the portion of Lytle's declaratory judgment action that seeks withdrawal of the disciplinary action and reinstatement to his original position and pay grade does not seek an award of money damages and is not barred by governmental immunity. However, we conclude the portion of Lytle's declaratory judgment action that seeks back pay is a claim for money damages and is barred by governmental immunity. Further, to the extent Lytle's declaratory judgment action seeks a money judgment for the unspecified, back benefits, that claim is also barred by governmental immunity.[6]

---

6. Our conclusion on "back ... benefits" is    made on the record before us. We express no

## 2. Mandamus

■ Second, we must consider whether governmental immunity bars Lytle's claims seeking a writ of mandamus. An original proceeding for a writ of mandamus initiated in the trial court is a civil action subject to trial and appeal on substantive issues and rules of procedure as any other civil suit. *See Guthery v. Taylor,* 112 S.W.3d 715, 720 (Tex.App.-Houston [14th Dist.] 2003, no pet.) (citing *Anderson v. City of Seven Points,* 806 S.W.2d 791, 792 n. 1 (Tex.1991)).

■ A writ of mandamus will issue to compel a public official to perform a ministerial act. *See id.* An act is ministerial when the law clearly delineates the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion. *See id.* When a statute delineates the act an official is to perform with sufficient certainty so nothing is left to the exercise of discretion, the case involves only performance of a ministerial act, and is subject to mandamus. *See id.* Compliance with sections 614.022 and 614.023 of the Texas Government Code delineate the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion. *See id.* at 720–24.

■ Whether reinstatement and back pay and benefits are recognized equitable remedies has been addressed by Texas courts. Reinstatement is an equitable remedy *per se. See Haynes,* 35 S.W.3d at 183. However, the opinions of the Texas courts of appeals allowing mandamus relief against a governmental unit that included an award of back pay and benefits,[7] predate the recent per curiam opinion in *Williams,* where the Texas Supreme Court implicitly held that claims for monetary damages are barred by immunity unless the legislature expressly waived immunity from suit in clear and unambiguous language. *See Williams,* 216 S.W.3d at 829 (discussing Texas Local Government Code).

■ In this case, Lytle seeks a finding that Seagoville failed to comply with sections 614.022 and 614.023 of the Texas Government Code or article VIII, section 4 of the Seagoville City Charter. Lytle prays for mandamus relief requiring Seagoville to withdraw the disciplinary action, reinstate Lytle to his original position and pay grade, and to restore his back pay and unspecified, back benefits, which he would have received, but for Seagoville's noncompliance. We conclude the portion of Lytle request for mandamus relief requiring Seagoville to withdraw the disciplinary action and to reinstate him to his original position and pay grade is not barred by governmental immunity. *See Haynes,* 35 S.W.3d at 183 (reinstatement is equitable remedy *per se* ). However, the portion of Lytle's petition for mandamus that seeks back pay is a claim for money damages and is barred by governmental immunity. Further, to the extent Lytle's request for mandamus . seeks a money judgment for the unspecified, back benefits, that claim is also barred by governmental immunity.[8]

opinion regarding whether or not Lytle's claims for any "back ... benefits," which might be characterized as something other than a claim for money damages, are subject to a plea of governmental immunity.

7. *See Bittle,* 167 S.W.3d at 26–27; *Guthery,* 112 S.W.3d at 721–24; *see also Bell,* 221 S.W.3d 317, 325 (appellants argued manda-

mus relief including award of back pay was allowable because under that circumstance back pay is equitable remedy, but appellate court did not consider argument because appellants did not request writ of mandamus).

8. *See supra* note 7.

### 3. Injunctive Relief

Finally, we must consider whether Lytle's claim for injunctive relief is barred by governmental immunity. Suits to compel government officers to act within their official capacities do not attempt to subject the government to liability. *See IT–Davy,* 74 S.W.3d at 855.

Lytle's request for an injunction does not specify the injunctive relief he seeks. To the extent Lytle's request for an injunction seeks to require Seagoville to restore his back pay, like his requests for declaratory judgment and a writ of mandamus, it is a claim for monetary damages barred by governmental immunity because the only remedy would be money damages. *See Williams,* 216 S.W.3d at 829; *Bell,* 221 S.W.3d 317, 324. Also, to the extent Lytle's request for an injunction seeks a money judgment for the unspecified, back benefits, that claim is barred by governmental immunity.[9] However, to the extent Lytle's request for an injunction would require Seagoville to follow the law in the future, withdraw the disciplinary action, and reinstate him to his original position and pay grade, those claims do not seek money damages and are not barred by governmental immunity.

Seagoville's first issue is decided against it, in part, and in its favor to the extent that all of Lytle's claims seeking back pay and all of his claims for unspecified, back benefits that seek a money judgment are barred by governmental immunity.[10] Based on our resolution of Seagoville's first issue, we need not address the second and third issues.

### III. OFFICIAL IMMUNITY

In the fifth issue, Bustos argues the trial court erred when it refused to grant her motion for traditional summary judgment because she enjoys official immunity from liability. She contends she applied her professional judgment when deciding to report the incident, Lytle's inappropriate behavior was directed toward her, she reported the incidents in compliance with Seagoville policies and police department general orders, her personal motivations for reporting the incident are irrelevant, and any reasonable employee could have concluded Lytle's conduct should be reported. Lytle responds that Bustos did not file a complaint against him in good faith and her complaint was not filed in the course and scope of her employment. He also argues Bustos was not acting reasonably. However, Lytle does not dispute that the act of filing a complaint is a discretionary duty.

#### A. Applicable Law

Official immunity is an affirmative defense that protects government employees from personal liability. *See Ballantyne v. Champion Builders, Inc.,* 144 S.W.3d 417, 424 (Tex.2004); *Telthorster v. Tennell,* 92 S.W.3d 457, 460 (Tex.2002). The doctrine of official immunity provides an affirmative defense for law enforcement and emergency response personnel. *See Ballantyne,* 144 S.W.3d at 423 (citing *Telthorster,* 92 S.W.3d at 459–60). Government employees who report incidents of inappropriate behavior are protected by official immunity. *See Vela v. Rocha,* 52 S.W.3d 398, 405 (Tex.App.-Corpus Christi 2001, no pet.).

Government employees are entitled to official immunity from lawsuits arising from performance of their: (1) discretionary duties; (2) in good faith; and (3) within the scope of their employment.

---

9. *See supra* note 7.

10. *See supra* note 7.

*See Ballantyne*, 144 S.W.3d at 422; *Telthorster*, 92 S.W.3d at 460. An employee reporting an incident of inappropriate behavior acts in good faith when the employee: (1) witnessed the inappropriate behavior; (2) reported the incident as required by policy; (3) testified truthfully during the investigation and any administrative hearings; and (4) acted reasonably. *See Vela*, 52 S.W.3d at 405. Good faith may be established by the government employee's sworn affidavit. *See id.* An employee discharging the duties generally assigned, acts within the scope of his employment. *See Ballantyne*, 144 S.W.3d at 424.

■ To obtain summary judgment on the basis of official immunity, a government employee must conclusively establish each element of the defense and establish entitlement to judgment as a matter of law. *See Telthorster*, 92 S.W.3d at 460; *Dallas County v. Gonzales*, 183 S.W.3d 94, 113–14 (Tex.App.-Dallas 2006, pet. denied) (op. on reh'g).

### B. Application of the Law to the Facts

■ Attached to Bustos's motion for traditional summary judgment were the sworn affidavits of Bustos and Shareese Weaver, Director of the Human Resources Department for Seagoville. First, Bustos's affidavit states the basis of the complaints she filed against Lytle and recites facts concerning incidents of his inappropriate behavior toward her. She states she did not discuss the specifics of her complaints outside of the official investigation or legal proceedings. Also, Bustos states that Seagoville policy requires employees to immediately report other employees violating the policy.

Second, Weaver stated in her affidavit: [Seagoville's] personnel policies require an employee to report allegations of misconduct to his or her direct supervisor, or in the alternative, directly to the Human Resources Department. The individual employee must use his or her discretion in determining whether certain behavior constitutes a violation of [Seagoville] policy that must be reported. Every [Seagoville] employee receives a copy of the policy manual, and reports of unlawful behavior are considered to be within the scope and course of each person's employment duties.

Attached to Weaver's affidavit are copies of the Seagoville policies and procedures manual and general orders of the Seagoville Police Department, which Weaver states are true and correct copies and kept by her on behalf of Seagoville in the regular course of business. These policies and general orders establish the policy and procedures for an employee filing a complaint of inappropriate behavior against another employee and generally assign each employee the duty to report incidents of inappropriate behavior. Policy number 703 of the Seagoville policy and procedures manual states, in part:

If you experience or witness sexual or other unlawful harassment in the workplace, report it immediately to your supervisor. If the supervisor is unavailable or you believe it would be inappropriate to contact that person, you should immediately contact the Human Resources Department or any member of management.

*See* Seagoville, Tex., Policy and Procedures Manual no. 703. Seagoville Police Department general order number 92–49(B)(2) states, in part:

An employee who detects a violation of policy and/or procedure of a serious nature shall immediately, or as soon as feasible, report such violation to the on-duty supervisor or the officer[-]in-charge.

*See* Seagoville Police Department, *Disciplinary Actions,* Gen. Order No. 95–049(B)(2) (eff.Nov.17, 1992). Subsection (J) of the addendum to general order number 92–49 states, in part:

> An employee who is offended by a comment, joke, statement, writing, or other material that violates this order must file a written complaint to the Chief of Police through the chain of command *no later than 5 days* after the occurrence. Failure to file a written complaint as required shall be deemed that the comment, joke, writing, or matter was not offensive and the validity of any further grievance or complaint pertaining that [sic] particular incident shall be deemed invalid.

*See* Seagoville Police Department, *Disciplinary Actions,* Gen. Order No. 95–049 addendum (eff.Mar.10, 1998) (emphasis in orig.).

Also attached to Weaver's affidavit are copies of the complaints Bustos filed against Lytle. In these complaints Bustos detailed her allegations of Lytle's inappropriate behavior and attached notes, cartoons, drawing, emails, and cards, she claimed contained sexually explicit images and offending messages sent to her from Lytle.

In his response to the motion for traditional summary judgment, Lytle does not directly respond to Bustos's affirmative defense of official immunity. However, he does argue Bustos made "false and malicious statements [ ] to obtain a favorable position in the department." Also, Lytle attached his responses to Bustos's complaints and argues they "set out a completely different set of facts as those alleged by Bustos." However, Lytle's differing version of events relating to Bus-

tos's complaints that he behaved inappropriately do not negate Bustos's evidence showing she performed a discretionary duty, in good faith, within the scope of her employment.

We conclude Bustos conclusively established each element of the affirmative defense of official immunity, establishing her entitlement to judgment as a matter of law. As a result, the trial court erred when it denied Bustos's motion for traditional summary judgment because she has official immunity.

Bustos's fifth issue is decided in her favor. Accordingly, we need not address the fourth issue.

## IV. CONCLUSION

The trial court did not err when it denied Seagoville's plea to the jurisdiction with respect to the portion of Lytle's claims for declaratory, mandamus, and injunctive relief seeking: (1) withdrawal of the disciplinary action and reinstatement to his original position and pay grade; and (2) Seagoville to follow the law in the future. However, the trial court erred when it denied Seagoville's plea to the jurisdiction with respect to the portion of Lytle's claims for declaratory, mandamus, and injunctive relief seeking back pay and, to the extent he seeks a money judgment, unspecified, back benefits.[11]

Accordingly, the trial court's order denying Seagoville's plea to the jurisdiction is reversed, in part, and a judgment is rendered dismissing Lytle's claims for back pay and his claims for unspecified, back benefits, to the extent the claims for the unspecified, back benefits seek a money judgment.[12] The remainder of the trial court's order denying Seagoville's plea to the jurisdiction is affirmed.

11. *See supra* note 7.

12. *See supra* note 7.

The trial court erred when it denied Bustos's motion for traditional summary judgment because she has official immunity. The trial court's order denying Bustos's motions for traditional and no-evidence summary judgment is reversed, in part, and judgment is rendered dismissing Lytle's claims against Bustos for intentional infliction of emotional distress, libel, and slander. The remainder of the trial court's order denying Bustos's motions for traditional and no-evidence summary judgment is affirmed.