

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00498-CV

———————————————

NORTEX REGIONAL PLANNING COMMISSION, Appellant

V.

CITY OF BELLEVUE, Appellee

---

On Appeal from the 97th District Court
Clay County, Texas
Trial Court No. 2023-0046C-CV

---

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Justice Walker

# MEMORANDUM OPINION

## I. INTRODUCTION

This interlocutory appeal follows the trial court's denial of Appellant Nortex Regional Planning Commission's (Nortex) plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8).

In two issues, Nortex asserts that the trial court erred by denying its plea to the jurisdiction on Appellee City of Bellevue's (Bellevue) claims of breach of contract and promissory estoppel. Because there was no waiver of immunity on the breach-of-contract claim and because the promissory-estoppel claim is barred by Section 271.152 of the Texas Local Government Code, Nortex is immune from suit due to governmental immunity. *See* Tex. Loc. Gov't Code Ann. § 271.152. Thus, the trial court erred by denying Nortex's plea to the jurisdiction on both claims. We therefore reverse the trial court's order and render judgment granting Nortex's plea to the jurisdiction.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Nortex is a statutory regional planning commission—a political subdivision of the State of Texas, *see id.* § 391.003(c)—and Bellevue is a governmental entity.

In August 2020, Bellevue retained Nortex to help the city obtain and implement a $275,000 Texas Community Development Block Grant from the Texas Department of Agriculture (TDA) to pay for water, wastewater, street, road, or

drainage improvements. Nortex and Bellevue executed an agreement for services by signing a written contract together.

Under the contract's scope of services, Nortex agreed to provide Bellevue with grant writing services at no cost, as well as services related to project management; financial management; environmental review; acquisition; construction management; fair housing and equal opportunity; and audit and close-out procedures associated with the grant. Bellevue agreed to pay Nortex for its project management services. Acknowledging that the grant was neither guaranteed nor payable by Nortex, Bellevue included an exit clause that permitted the city to terminate the contract if the grant failed. The contract also included a "termination for cause" clause that outlined Nortex's responsibilities if it failed to fulfill any of its obligations.[1]

Nortex began working on the grant application, and the grant agreement period formally began in February 2021. The grant agreement required an environmental review to be completed within the first six months. Nortex submitted an environmental review packet in July 2021 and in December 2021, but both packets were declined due to errors. Because of this inadequate progress, TDA provided notice that the grant would be terminated if the defects were not cured. TDA then provided Nortex an opportunity to correct these deficiencies—as required by the

_____

[1]For example, Nortex would have to return all related documents prepared in connection with the project and would be entitled to reasonable compensation for any services "actually and satisfactorily" performed.

3

grant agreement. Nortex subsequently submitted an environmental review packet that was ultimately accepted by TDA in May 2022. Shortly after accepting the environmental review packet, TDA delivered an email to Bellevue's mayor granting the city the ability to use the grant funds towards the project in June 2022.[2]

In January 2022—four months before the grant authorization letter was issued in May 2022—Bellevue executed a construction contract with a third-party contractor to perform the water and sewer improvements subject to the grant. The third-party contractor subsequently performed the construction work for Bellevue. However, TDA then terminated the grant[3] because federal law had been violated when the construction contract was executed prior to the completion of the environmental review clearance process.[4]

---

[2]However, this authority was revoked a week later when TDA received grant-related documents that noted Bellevue's execution of a construction contract with a third-party contractor prior to the issuance of the grant authorization letter.

[3]TDA identified other defects, like errors in the environmental review packet, that Bellevue contends were caused by Nortex.

[4]Execution of a construction contract prior to completion of an environmental review process is a violation of Section 58.22 of Title 24 of the Code of Federal Regulations. *See* 24 C.F.R. § 58.22(a) (2024) ("[U]ntil the [Request for Release of Funds] and the related certification have been approved, neither a recipient nor any participant in the development process may . . . undertake an activity or project under a program listed in § 58.1(b) if the activity or project would have an adverse environmental impact or limit the choice of reasonable alternatives."); *see also id.* § 58.1(b) (listing Community Development Block Grant programs as subject to Part 58). TDA's letter to Bellevue regarding the grant's denial stated, "A violation of 24 CFR Section 58.22 constitutes an incurable breach - once a violation of 24 CFR Section 58.22 occurs, the original project is ineligible for further grant expenditures

Bellevue believed that Nortex was responsible for the denial of the grant. Nortex maintained that it did not cause the denial of the grant, yet it tried to file an insurance claim with its own carrier under the Errors and Omissions Liability Coverage to see if insurance would cover the funding. The claim was denied.

Bellevue then brought negligence, breach-of-contract, and promissory-estoppel claims against Nortex and demanded that Nortex pay $275,000—the cost of the construction contract. Bellevue contended that the grant was denied because Nortex failed to file the proper environmental review paperwork.

In response, Nortex filed a plea to the jurisdiction and a motion to dismiss. Nortex argued that it was immune from suit because Bellevue's claims of negligence and promissory estoppel did not fall within a waiver of immunity under Section 101.021 of the Texas Tort Claims Act and because Bellevue's claim for breach of contract did not fall within the limited waiver of immunity for any breach of contract against a governmental entity under Sections 271.151–.153 of the Texas Local Government Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021; Tex. Loc. Gov't Code Ann. §§ 271.151–.153. Nortex further argued that even if Bellevue could bring suit, (1) Nortex cannot be contractually liable for money that it did not agree to pay and (2) it is not responsible for the loss of the grant due to Bellevue's own conduct.

---

and the grant recipient must return any grant funds originally disbursed for the project."

5

Bellevue filed a response to Nortex's plea to the jurisdiction. Bellevue argued that Nortex had waived its immunity by entering into a contract with Bellevue and that it was entitled to damages because there was no immunity from claims for direct damages. Nortex filed a reply and maintained that its immunity had not been waived because it had not entered a contract "subject to" Chapter 271 of the Texas Local Government Code. Nortex argued that it and Bellevue had agreed to be bound by the terms of the contract only if the grant was awarded.

Following a hearing, the trial court granted Nortex's plea to the jurisdiction on Bellevue's negligence claim but denied it on Bellevue's breach-of-contract and promissory-estoppel claims. Nortex brought this appeal.

### III. LAW ON GOVERNMENTAL IMMUNITY

Under the common-law doctrine of sovereign immunity, the sovereign entity cannot be sued without its consent. *Tooke v. City of Mexia*, 197 S.W.3d 325, 331–32 (Tex. 2006). Governmental immunity—a derivative of sovereign immunity—embraces two concepts: immunity from suit and immunity from liability. *Id.* at 332. Generally, governmental entities, including subdivisions of the state, enjoy immunity from suits. *City of San Antonio v. Tenorio*, 543 S.W.3d 772, 775 (Tex. 2018). Immunity from suit deprives a trial court of subject-matter jurisdiction. *City of Corinth v. NuRock Dev., Inc.*, 293 S.W.3d 360, 365 (Tex. App.—Fort Worth 2009, no pet.).

However, a governmental entity may consent to waiving its immunity. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 695 (Tex. 2003). Because the will of the

6

governmental entity is expressed by the people, we defer to the legislature to determine whether immunity has been waived. *Id.* There are practical reasons for this, particularly in the contract-claims context, where legislative control over sovereign immunity allows the legislature to respond to changing conditions and revise existing agreements if doing so would benefit the public. *Wasson Ints., Ltd. v. City of Jacksonville*, 489 S.W.3d. 427, 433 (Tex. 2016). Where there is no clear and unambiguous statutory language waiving immunity, courts may not assume that it has been waived. *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011); *see* Tex. Gov't Code Ann. § 311.034 ("[A] statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language.").

## IV. STANDARD OF REVIEW

A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction over a case. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex. 2000). The plea may challenge whether the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). Whether a trial court has subject-matter jurisdiction and whether the plaintiff has alleged facts that affirmatively demonstrate that jurisdiction are questions of law that we review de novo. *Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

7

We construe the pleadings liberally in favor of the plaintiff, looking to the plaintiff's intent, and accept as true the factual allegations in the pleadings. *Id.* If the pleadings do not contain sufficient facts to demonstrate jurisdiction, the plaintiff should be allowed to amend its pleadings; however, if the pleadings affirmatively negate jurisdiction, we may grant the plea to the jurisdiction without allowing the plaintiff an opportunity to amend. *Id.* at 226–27. Pleas to the jurisdiction that challenge the pleadings resemble a motion to dismiss under Rule 91a. *City of Austin v. Powell*, 704 S.W.3d 437, 447 (Tex. 2024); *see* Tex. R. Civ. P. 91a.

## V. DISCUSSION

In its plea to the jurisdiction, Nortex challenged the sufficiency of Bellevue's pleadings, stating that "[e]ach of [Bellevue]'s claims [were] fatally flawed and deficient as pled." On appeal, Nortex claims that the trial court erred by denying Nortex's plea to the jurisdiction on Bellevue's breach-of-contract and promissory-estoppel claims. Because Bellevue's pleadings affirmatively negate jurisdiction, we agree.

### 1. Breach-of-Contract Claim

In its first issue, Nortex contends that the trial court erred by denying its plea to the jurisdiction on Bellevue's breach-of-contract claim because the $275,000 sought as damages did not fit within Sections 271.152 and 271.153's limited scope of waiver. *See* Tex. Loc. Gov't Code Ann. §§ 271.152–.153. We agree. Looking at Bellevue's pleadings, there is no waiver of governmental immunity as to the claim alleged.

8

## a. Applicable Law

Section 271.152 waives immunity for contract claims that meet certain conditions. Tex. Loc. Gov't Code Ann. § 271.152; *Zachry Constr. Corp. v. Port of Hous. Auth. of Harris Cnty.*, 449 S.W.3d 98, 110 (Tex. 2014). Waiver does not depend on outcome, but instead requires a showing of a substantial claim that meets Section 271.152's conditions. *Zachry Constr. Corp.*, 449 S.W.3d at 109. A substantial claim is one in which the claimant pleads facts with some evidentiary support that constitutes a claim for which immunity is waived, not necessarily that the claimant will prevail. *Id.* at 110 (citing *Miranda*, 133 S.W.3d at 226–28).

Section 271.153 of the Texas Local Government Code allows only certain types of damages for breach-of-contract claims. Tex. Loc. Gov't Code Ann. § 271.153. All other damages are barred. *Id.* Thus, if the plaintiff's pleadings do not fall within Section 271.153's permissible damages, then governmental immunity is not waived. *Zachry*, 449 S.W.3d at 109 ("Section 271.152 uses Section 271.153 to further define to what extent immunity has been waived"). Here, if Bellevue's pleadings do not plead facts with some evidentiary support that constitute a claim for which governmental immunity has been waived, then its suit is barred by governmental immunity. We construe Bellevue's pleadings liberally in its favor, looking to Bellevue's intent. *Miranda*, 133 S.W.3d at 226. We must now determine whether Bellevue has alleged facts that affirmatively demonstrate the trial court's jurisdiction to hear its breach-of-contract claim. *Id.*

## b. No Waiver of Immunity

Bellevue's pleadings alleging that Nortex failed to perform its contractual obligations—by failing to submit an acceptable environmental review packet in a timely and correct manner—are inconsistent with the record before us and affirmatively negate the existence of jurisdiction. Bellevue was required to present a substantial claim that meets the waiver requirements of Section 271.152. *See Zachry*, 449 S.W.3d at 110; *see also* Tex. Loc. Gov't Code Ann. § 271.152. The record lacks at least some evidentiary support for Bellevue's breach-of-contract claim. *See Zachry*, 449 S.W.3d at 110 ("[T]he claimant must plead facts with some evidentiary support that constitute a claim for which immunity is waived.").

Bellevue contends that Nortex breached the contract by failing to submit an environmental review packet in a timely and correct manner, which caused the city damages to the tune of $275,000 when the grant was terminated after Bellevue hired a third-party contractor to complete the project. However, a breach-of-contract claim requires that a defendant breach the contract by failing to perform or tender performance *as the contract required*. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21. (Tex. 2018) (emphasis added). Looking to the contract, there is no provision that requires Nortex to submit an environmental review packet by a certain date. In fact, Bellevue's contention is undermined by the contract's provision that states, "[A]ll of the services required and performed hereunder shall be completed no later than sixty days (60) after TDA contract end date for this project." Because the

10

grant was terminated, TDA never set a contract end date for the project. Thus, without a deadline for Nortex's submission of the environmental review packets, Nortex appears to have complied with the contract by completing an acceptable environmental review packet before an end date set by TDA. Taking the allegations as true, Bellevue's breach-of-contract claim has no basis in law to survive the substantiality requirements set forth in *Zachry* and *Miranda*. *See Zachry*, 449 S.W.3d at 110; *Miranda*, 133 S.W.3d at 226.

Even assuming arguendo that there was a breach of the contract, we strain to see a viable claim for damages that would be permissible under Section 271.153. *See* Tex. Loc. Gov't Code Ann. § 271.153. While amounts "due and owed"[5] and amounts that are "a direct result of owner-caused delays or acceleration"[6] are recoverable, Bellevue's sought-after damages appear to be beyond this narrow scope. *See id.* § 271.153. Bellevue seeks to recover $275,000—the cost of the third-party contractor it hired—because of Nortex's alleged failure to timely and correctly submit environmental review packets. Assuming Nortex breached the contract by failing to submit an acceptable environmental review packet in a timely and correct manner, it is

---

[5]"A balance due and owed . . . is simply the amount of damages for breach of contract payable and unpaid. Direct damages for breach . . . certainly qualify." *Zachry*, 449 S.W.3d at 111 (internal quotation marks omitted).

[6]"'[A]mount[s] owed as compensation for . . . owner-caused delays,' allowed by Subsection (a)(1), are consequential damages that are recoverable by law." *Zachry*, 449 S.W.3d at 112 (quoting Tex. Loc. Gov't Code § 271.153(a)(1)).

difficult to imagine how Bellevue's contracting with a third-party contractor would be the natural and necessary result from Nortex's failure to submit a timely and correct environmental review packet. *See Dallas/Fort Worth Int'l Airport Bd.*, 576 S.W.3d 362, 373 (Tex. 2019) ("Direct damages . . . 'are the necessary and usual result of,' and 'flow naturally and necessarily from,' that wrongful act." (emphasis omitted)); *DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160, 180 (Tex. App.—Fort Worth 2012, no pet.) ('Consequential damages' . . . result naturally but not necessarily from the wrongful act.").

If anything, Nortex's failure to timely and correctly submit the packet would likely have caused Bellevue to refrain from contracting with a third-party contractor until the packet received clearance from TDA. At best, Bellevue seeks to recover consequential damages; at worst, Bellevue's pleadings do not even allege facts that support a breach-of-contract claim. Consequently, construing Bellevue's pleadings liberally, Bellevue's pleadings do not present a substantial claim for which immunity is waived. *Zachry*, 449 S.W.3d at 110; *Miranda*, 133 S.W.3d at 226.

Turning to Bellevue's intent, whether Bellevue intended to plead a breach-of-contract claim at all is questionable. In form, the pleadings look like a breach-of-contract claim, but in substance, they resemble a promissory-estoppel claim. Bellevue's petition states that "[i]n accordance with its belief that the block grant had been granted . . . and would be paid in time . . . , [Bellevue] hired a third-party contractor to complete the water delivery improvement project and agreed to pay for

12

their services." Under its breach-of-contract claim, Bellevue further alleges that "[Nortex] . . . failed to perform its contractual obligations . . . [by] failing to submit an acceptable environmental review packet . . . in a timely and correct manner." On its face, the complaint seems to raise a claim for breach of contract. However, once we examine its underlying substance, we are confronted with a claim that increasingly parallels Bellevue's promissory-estoppel claim.

Bellevue asserts that Nortex breached the contract by failing to submit a timely and correct environmental review packet by the time Bellevue decided to contract with a third-party contractor. Bellevue admits that it made its decision "[i]n accordance with its belief that the block grant had been granted." But as we have noted, Nortex did not fail to meet any explicit deadline to submit a timely and correct environmental review packet, nor did it fail to meet TDA's grant requirements.[7] Rather, it seems that Bellevue is alleging, in substance, that its decision to contract with the third-party contractor was premised on its reliance on Nortex's oral representations.[8] This promissory-estoppel claim appears to be masquerading as a breach-of-contract claim. In fact, at oral argument, Bellevue admitted that it

---

[7]TDA did provide a notice of termination in April 2022 for the failure to meet progress milestones, but it was required to provide an opportunity to cure this failure. Bellevue's responses to this notice were timely and adequate—excluding its decision to contract with a third-party contractor.

[8]There are no documents in the record before us that support Bellevue's contention that Nortex instructed the city to proceed with contracting with the third-party contractor.

13

contracted with the third-party contractor in part because Nortex provided oral representations that it could go ahead and contract with a contractor. Thus, the substance of Bellevue's pleadings do not reflect an intent to plead a breach-of-contract claim.

Because there is no claim for which immunity has been waived by statute, Bellevue's claim for breach of contract is barred by governmental immunity. Accordingly, we hold that the trial court erred by denying Nortex's plea to the jurisdiction as to Bellevue's breach-of-contract claim, and we sustain Nortex's first issue.

## 2. Promissory-Estoppel Claim

In Nortex's second issue, it complains that the trial court erred by denying its plea to the jurisdiction on Bellevue's promissory-estoppel claim. Because Bellevue's promissory-estoppel claim does not satisfy the writing requirement of Section 271.152, governmental immunity also bars Bellevue's promissory-estoppel claim. *See* Tex. Loc. Gov't Code Ann. § 271.152.

It is well-settled in Texas that certain equitable claims do not fall within a waiver of governmental immunity. *Richardson Hosp. Auth. v. Duru*, 387 S.W.3d 109, 114 (Tex. App.—Dallas 2012, no pet.); *see Gay v. City of Wichita Falls*, 457 S.W.3d 499, 507 (Tex. App.—El Paso 2014) (promissory estoppel); *Harris Cnty. Flood Control Dist. v. Great Am. Ins. Co.*, 309 S.W.3d 614, 617 (Tex. App.—Houston [14th] 2010, no pet.) (quantum meruit); *City of Seagoville v. Lytle*, 227 S.W.3d 401, 410 (Tex. App.—Dallas

14

2007, no pet.) (declaratory judgment). Promissory estoppel is one such equitable claim that is barred by governmental immunity. *McDaniel v. Crowley Indep. Sch. Dist.*, No. 02-24-00053-CV, 2025 WL 876777, at *5 (Tex. App.—Fort Worth Mar. 20, 2025, no pet.) (citing *Gay*, 457 S.W.3d at 507).

Therefore, quasi-contractual claims, such as Bellevue's promissory-estoppel claim, fall outside the scope of waiver delineated in Section 271.152 of the Texas Local Government Code. Section 271.152 states that

> [a] local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

Tex. Loc. Gov't Code Ann. § 271.152. Section 271.151 clarifies that, for a contract to be a "contract subject to this subchapter," there must be, *inter alia*, a "written contract." *Id.* § 271.151.

Here, because an implied contract is not a written contract, Nortex's immunity is not waived on that basis, and it is immune from Bellevue's promissory-estoppel claim. *See* Tex. Loc. Gov't Code Ann. § 271.152; *see also Gay*, 457 S.W.3d at 507. Accordingly, we hold that the trial court erred by denying Nortex's plea to the jurisdiction as to Bellevue's promissory-estoppel claim, and we sustain Nortex's second issue.

15

## VI. CONCLUSION

We hold that the trial court erred by denying Nortex's plea to the jurisdiction because governmental immunity bars Bellevue's claims. Having sustained Nortex's two issues, we reverse the trial court's order denying Nortex's plea to the jurisdiction and render judgment granting Nortex's plea to the jurisdiction and dismissing Bellevue's claims against Nortex for lack of subject-matter jurisdiction.[9] Tex. R. App. P. 43.2(c); 43.3; *see Miranda*, 133 S.W.3d at 228.

/s/ Brian Walker

Brian Walker
Justice

Delivered: July 3, 2025

---

[9]Nortex's conclusion and prayer requests, in addition to reversing and rendering, that we "remand the case to the trial court to determine an award of attorney'[s] fees payable to [Nortex] under the prevailing party provision of the contract." However, Nortex did not request attorney's fees in any of its pleadings in the trial court. We make no comment on whether Nortex is entitled to such fees, but because it never pleaded for attorney's fees, we do not remand. *See Farmers Tex. Cty. Mut. Ins. v. Griffin*, 868 S.W.2d 861, 870 (Tex. App.—Dallas 1993, writ denied) (declining to consider or remand request for attorney's fees for party prevailing on appeal because party did not, in its pleadings or motions, specifically request attorney's fees).