ACCEPTED
06-14-00086-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
3/2/2015 5:20:51 PM
DEBBIE AUTREY
CLERK

NO. 06-14-00086-CV

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
3/3/2015 9:48:00 AM
DEBBIE AUTREY
Clerk

# In The Court of Appeals
# For The Sixth Judicial District

FAYE COMTE and LAURA SEVERT,
Appellants,

v.

SMITH COUNTY COMMISSIONERS COURT and
JOEL P. BAKER, CARY NIX, JEFF WARR,
JOANN HAMPTON and TERRY PHILLIPS, each in his or her official capacity
as a Smith County Commissioner,
Appellees.

## Brief of Appellees

ON APPEAL FROM THE 241ST JUDICIAL DISTRICT COURT
OF SMITH COUNTY, TEXAS
TRIAL CAUSE NO. 13-2492-C

ROBERT S. DAVIS
FLOWERS DAVIS, PLLC
1021 ESE LOOP 323, STE. 200, TYLER, TEXAS 75701
TELEPHONE: 903.534.8063
FACSIMILE: 903.534.1650

ATTORNEYS FOR APPELLEES

# IDENTITY OF PARTIES

Pursuant to TEXAS RULE OF APPELLATE PROCEDURE 38.1(a), the following is "a complete list of all parties to the trial court's judgment . . . appealed from, and the names and addresses of all trial and appellate counsel . . . ." TEX. R. APP. P. 38.1(a).

**Appellants/Relators:**
Faye Comte
Laura Severt

**Counsel for Appellants/Relators:**
Brandon Beck
STARR SCHOENBRUN COMTE MCGUIRE, PLLC
11o N. College Ave., Suite 1700
Tyler, Texas 75702

**Appellees/Respondents:**
Smith County Commissioners Court
Joel P. Baker
Cary Nix
Jeff Warr
Joann Hampton
Terry Phillips

**Counsel for Appellees/Respondents:**
Robert S. Davis
FLOWERS DAVIS, P.L.L.C.
1021 ESE Loop 323, Suite 200
Tyler, Texas 75701

# TABLE OF CONTENTS

IDENTITY OF PARTIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -i-

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -ii-

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -iv-

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

I.     APPELLANTS' CLAIMS ARE MOOT, BECAUSE THEY ASK THE COMMISSIONERS TO PERFORM AN ACT NOT ALLOWED UNDER THE TEXAS CONSTITUTION AND THE TEXAS LOCAL GOVERNMENT CODE BY REQUIRING THE COMMISSIONERS TO AMEND THE EXPIRED BUDGET FOR THE FISCAL YEAR OF 2013.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

II.     EVEN IF THIS COURT DETERMINES THAT APPELLANTS' CLAIMS ARE RIPE FOR REVIEW, A WRIT OF MANDAMUS IS NOT THE PROPER PROCEDURE FOR BRINGING SUCH CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-

A.     The actions of the Commissioners were discretionary in nature. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-

B.     Appellants have an adequate remedy at law, other than mandamus, by potentially filing suit in district court.. . . . . . -18-

III.    APPELLANTS' WRIT OF MANDAMUS IS BARRED BY LEGISLATIVE AND GOVERNMENTAL IMMUNITY.. . . . . . . -21-

        A.    The Commissioners are entitled to absolute legislative immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

        B.    The Commissioners are entitled to governmental immunity because there is no question that Appellants seek retrospective monetary damages.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

CONCLUSION AND PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -34-

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -36-

# INDEX OF AUTHORITIES

## CASES

*Anderson v. City of Seven Points*,
806 S.W.2d 791 (Tex. 1991).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -24-

*Brown v. Lubbock Cnty. Comm'rs Court*,
185 S.W.3d 499 (Tex. App.-Amarillo 2005, no pet.).. . . . . . . . . . . . . . -16-

*Catalina Dev., Inc. v. County of El Paso*,
121 S.W.3d 704 (Tex. 2003).. . . . . . . . . . . . . . . . . . . . . . . . . . . -22-, -23-

*Channelview Indep. Sch. Dist. v. A.R.C.I., Ltd.*,
199 S.W.3d 556 (Tex.App.-Houston [1st Dist.] 2006, no pet.). . . . . . . . -23-

*City of El Paso v. Heinrich*,
284 S.W.3d 366 (Tex. 2009).. . . . . . . . . . . . . . . . . . -25-, -26-, -32-, -33-

*City of Houston v. Houston Firefighters' Relief & Retirement Fund*,
196 S.W.3d 271 (Tex.App.-Houston [1st Dist.] 2006, no pet.). . . . . . . . -22-

*City of Houston v. Williams*,
216 S.W.3d 827 (Tex. 2007).. . . . . . . . . . . . . . . . . . -24--27-, -29-, -32-

*City of Seagoville v. Lytle*,
227 S.W.3d 401 (Tex. App.—Dallas 2007, no writ). . . -23-, -26-, -27-, -29-

*City of Terrell v. Dissaint*,
71 Tex. 770, 9 S.W. 593 (1888). . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

*City-County Solid Waste Control Bd. v. Capital City Leasing, Inc.*,
813 S.W.2d 705 (Tex. App.— Austin 1991, writ denied). . . . . . . . . . . . -13-

*Collin County, Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*,
654 F.Supp. 943 (N.D.Tex.1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

*Commissioners Court of Caldwell County v. Criminal*
*Dist. Attorney, Caldwell County,*
690 S.W.2d 932, 933-34 (Tex.App.—Austin 1985, writ ref'd n.r.e.).. . . . -17-

*Commissioners Court of Shelby County v. Ross*,
809 S.W.2d 754 (Tex.App.—Tyler 1991, no writ).. . . . . . . . . . . . . . . -17-

*Consumers Union of the United States, Inc.*,
446 U.S. at 731. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

*Guthery v. Taylor*,
112 S.W.3d 715 (Tex.App.-Houston [14th Dist.] 2003, no pet.). . . . . . . -23-

*Harris v. Jones,*
8 S.W.3d 383 (Tex. App.—El Paso 1999, no writ). . . . . . . . . . . . . . . -20-

*Hinojosa v. Tarrant County,*
355 S.W. 3d 812 (Tex. App—Amarillo 2011, no writ). . . . . . . . . . -27-,-29-

*Hooten v. Enriquez,*
863 S.W.2d 522 (Tex. App.—El Paso 1993, no writ). . . . . . . . . . . . . . -17-

*In e Perry*,
60 S.W.3d 857 (Tex. 2001).. . . . . . . . . . . . . . . . . . . . . . . . -16-, -21-

*Kaufman County v. Combs*,
393 S.W.3d 336 (Tex. App.—Dallas 2012, pet. denied). . . . . . . . . -29-, -34-

*Medina County Commissioners' Court v. Integrity Group Inc.*,
944 S.W.2d 6 (Tex.App.-San Antonio, 1996, no writ).. . . . . . . . . . . . -23-

*Merill v. Carpenter*,
867 S.W.2d 65 (Tex. App.— Fort Worth, 1993, writ denied). . . . . . . . . -21-

*Randall County Commissioner's Court v. Sherod*,
854 S.W.2d 914 (Tex. App. Amarillo 1993). . . . . . . . . . . . . . . . . . . -17-

*Reata Constr. Corp. v. City of Dallas*,
　　197 S.W.3d 371 (Tex. 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . -25-

*Smith v. Flack,*
　　728 S.W.2d 784 (Tex. Crim. App. 1987). . . . . . . . . . . . . . . . . . . . -18-, -21-

*Smith v. McCoy*,
　　533 S.W.2d 457 (Tex.App.—Dallas 1976, writ dism'd). . . . . . . . . . . . . -20-

*State ex rel. Vance v. Routt*,
　　571 S.W.2d 903 (Tex.Cr.App. 1978). . . . . . . . . . . . . . . . . . . . . . . -16-, -18-

*Supreme Court v. Consumers Union of the United States, Inc*.,
　　446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980).. . . . . . . . . . . . . -21-

*Tex. A&M Univ. Sys. v. Koseoglu*,
　　233 S.W.3d 835 (Tex. 2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-

*Texas & New Orleans R.R. Co. v. Galveston County*,
　　141 Tex. 34, 169 S.W.2d 713 (1943). . . . . . . . . . . . . . . . . . . . . . . . -13-

*Texas Dep't of Parks & Wildlife v. Miranda*,
　　133 S.W.3d 217 (Tex. 2004).. . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

*Texas Dept of Transp v. Jones*,
　　8 S.W.3d 636 (Tex. 1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

*Texas Natural Resource Conservation Com'n v. It–Davy*,
　　74 S.W.3d 849 (Tex. 2002).. . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-, -25-

*Travis County v. Pelzel & Assocs., Inc.*,
　　77 S.W.3d 246 (Tex. 2002).. . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-

*Vondy v. Commissioners Court*,
　　620 S.W.2d 104 (Tex. 1981).. . . . . . . . . . . . . . . . . . . . . . . . . . . . -28-, -29-

*Weber v. Sachse,*
> 591 S.W.2d 563 (Tex.Civ.App.—Dallas 1979, writ dism'd). . . . . . . . . . -17-

*Wichita Falls State Hosp. v. Taylor*,
> 106 S.W.3d 692 (Tex.2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

## RULES

TEX. R. APP. P. 38. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -i-

## STATUTES

TEX. CONST. ART. XI, § 7. . . . . . . . . . . . . . . . . . . . . . . . . . . -13-, -15-

TEX. LOC. GOV'T. CODE ANN. § 111.031 (Vernon 1987 & Supp.1983). . . . . . -17-

TEX. LOC. GOV'T. CODE ANN. § 111.043 (Vernon 1987 & Supp.1983). . . . . . -17-

TEX. LOCAL GOV'T CODE § 111.068. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

TEX. LOCAL GOV'T CODE § 111.070. . . . . . . . . . . . . . . . . . . . . -12-, -14-, -15-

TEXAS FAMILY CODE § 107.015. . . . . . . . . . . . . . . . . . . . . . . . . -1-, -15-, -19-

TEXAS GOVERNMENT CODE § 614.022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -26-

TEXAS GOVERNMENT CODE § 614.023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -26-

TEXAS PROBATE CODE § 669 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -30-, -32-

**STATEMENT OF THE CASE**

On September 16, 2013, Faye Comte, Jarrod Heath, Jeff Sanders, Jennifer Deen, and Laura Severt filed a Petition for Writ of Mandamus against the Smith County Commissioners Court and Joel Baker, Cary Nix, Jeff Warr, Joann Hampton, and Terry Phillips in their official capacities as Smith County Commissioners in the 241st District Court of Smith County, Texas. CR at 1. The basis for this petition was an order issued by the Smith County Commissioners Court that after July 18, 2013, it would not approve additional funding for non-contract attorney fees in family law matters arising from the 321st Judicial District Court of Smith County, Texas, due to unwarranted and extravagant spending on the part of that court. CR at 18-19. Relators alleged that under Section 107.015 of the TEXAS FAMILY CODE, the Commissioners must pay attorney fees to court appointed attorneys ad litem who represent the child or an indigent parent in suits filed by the Texas Department of Family and Protective Services requesting termination of the parent-child relationship. CR at 7. Relators alleged that they had no adequate remedy at law and requested that a writ of mandamus be issued vacating the Commissioner Court's order and directing the Commissioners to pay relators for their services as attorneys ad litem for children and indigent parents in suits to terminate the parent-child relationship brought by the Texas Department of Family and Protective Services. CR

at 10, 13.

Defendants responded by filing a Plea to the Jurisdiction on October 13, 2014, alleging that Relators' claims were barred by legislative immunity and sovereign immunity, and that due to the fact that the fiscal year for 2013 had ended, Relators' claims were also moot. CR at 42-46. Defendants also generally denied all of relators' claims and asserted a number of affirmative defenses including sovereign and official immunity. CR at 47-48. Relators filed a Response to Defendants' Plea to the Jurisdiction on October 28, 2013. CR at 55. After the filing of the Response, one of the Relators, Jarrod Heath, filed a Motion for Partial Nonsuit of Petition for Writ of Mandamus indicating his desire to no longer seek mandamus relief. CR at 61. After the filing of these pleadings, 241st District Court Judge Jack Skeen, Jr., issued an Order of Recusal on November 14, 2013, requesting the Honorable Mary Murphy, Presiding Judge of the First Administrative Judicial Region, to appoint a visiting judge. CR at 63. Judge Murphy responded to the Order of Recusal on November 18, 2013, and assigned the Honorable Linda Thomas, Senior Judge of the 5th Court of Appeals, to the case. CR at 64.

Judge Thomas heard oral arguments by both sides on June 6, 2014. CR at 89. On August 25, 2014, Judge Thomas issued a Final Order denying Relators' Petition for Writ of Mandamus. CR at 75. On October 2, 2014, only Relators, Faye Comte

and Laura Severt, filed their Notice of Appeal challenging Judge Thomas' ruling. CR

at 76.  On December 29, 2014, Appellants filed their brief with this Court.

## ORAL ARGUMENT

Defendants/Appellees Smith County Commissioners Court and Joel Baker, Cary Nix, Jeff Warr, Joann Hampton, and Terry Phillips in their official capacities assert that Oral Argument would assist the Court in resolving the issues presented in this appeal; consequently, Appellees request that the Court grant Oral Argument in this case.

# ISSUES PRESENTED

**I.  APPELLANTS' CLAIMS ARE MOOT, BECAUSE THEY ASK THE COMMISSIONERS TO PERFORM AN ACT NOT ALLOWED UNDER THE TEXAS CONSTITUTION AND THE TEXAS LOCAL GOVERNMENT CODE BY REQUIRING THE COMMISSIONERS TO AMEND THE EXPIRED BUDGET FOR THE FISCAL YEAR OF 2013.**

**II.  EVEN IF THIS COURT DETERMINES THAT APPELLANTS' CLAIMS ARE RIPE FOR REVIEW, A WRIT OF MANDAMUS IS NOT THE PROPER PROCEDURE FOR BRINGING SUCH CLAIMS.**

**III.  APPELLANTS' WRIT OF MANDAMUS IS BARRED BY LEGISLATIVE AND GOVERNMENTAL IMMUNITY.**

**STATEMENT OF FACTS**

On June 18, 2013, the Smith County Commissioners Court entered an order pertaining to one of its most essential responsibilities: the county budget. CR at 17. In an exercise of budgetary discretion and policy making authority, the Commissioners Court issued an order "Setting Policy for Enforcement of Fiscal Year 2013 Budget Category Pertaining to Non-Contract Attorneys for Civil Family Cases in the 321st Judicial District Court." *Id.* The purpose of this order was to ensure that the Commissioners Court fulfilled its budgetary duties by spending county funds in strict compliance with the budget for the fiscal year 2013. *Id.* The Commissioners recognized that funds were not being spent in compliance with the 2013 budget, due to "unwarranted and extravagant" spending on behalf of the 321st Judicial District Court. CR at 18. The Commissioners Court had transferred tremendous amounts of additional funds to the 321st District Court during 2013 to the point where any continued budget transfers would have undermined the overall fiscal, budgetary, and policy goals of the county. CR at 18, 19 (n.1). Such additional budget transfers were made in addition to the set budget for the 321st District Court which was significantly higher than any other district court in Smith County.

Smith County consists of four district courts: the 241st District Court, 7th District Court, 114th District Court, and the 321st District Court. The adopted budget

-6-

for the fiscal year 2013 for the 241st District Court, 7th District Court, and 114th District Court was $228,110; $226,266; and $224,523 respectively for each court. CR at 50-51. The adopted budget for the 321st District Court was nearly 5 times that of any other district court in the amount of $1,030,229. CR at 51. Despite this seven figure budget, the 321st District Court continued to overspend this amount to the point that the Commissioners Court was expending additional funds. The overspending on the part of the 321st District Court was due in large part to the 321st District Court's appointment of 11 "hourly" ad-litem attorneys. CR at 41. These 11 attorneys are in addition to the already 9 contract attorneys that work in the 321st District Court. CR at 19, 41. This number of contract attorneys is equal to the total number of contract attorneys in the other district courts combined which each have three contract attorneys. CR at 19 ( n.2). In an effort to maintain the budget for the 2013 fiscal year, the Commissioners Court ordered that after July 18, 2013, the Commissioners Court would no longer approve any additional funding for non-contract attorneys fees in civil family matters in the 321st District Court and that the caseloads of the non-contract attorneys would be transferred to the 9 contract attorneys. CR at 19.

Appellants, Severt and Comte, were one of the 11 non-contract ad litem attorneys in the 321st District Court. In particular, they represented children and indigent parents in suits to terminate the parent-child relationship brought by the

Texas Department of Family and Protective Services. CR at 7-8. It is for these services that Appellants sought reimbursement from the County. Despite the fact that the Commissioners' Order went out on June 18, 2013, and gave Appellants one month to submit their invoices, Appellants did not present their invoices to the Commissioners Court until August 26, 2013, and September 10, 2013. CR at 23, 26. Pursuant to the Commissioners Court's Order, and due to the fact that the invoices were not submitted by the July 18, 2013, deadline, the Commissioners Court did not approve any additional funds to cover Appellants' invoices. CR at 5. Despite being aware of the Commissioners Court's position as of June 18, 2013, Appellants never asserted their alleged entitlement to the expenses they occurred until nearly three months later when they filed their Petition for Writ of Mandamus against the Commissioners Court and the Commissioners in their official capacities.

## SUMMARY OF THE ARGUMENT

Appellants' claims against the Smith County Commissioners Court and the Commissioners in their official capacity are moot, because Appellants require the Commissioners Court to perform an action not allowed under the Texas Constitution or the Texas Local Government Code by asking the Commissioners Court to amend the expired 2013 budget in order to compensate Appellants for expenses incurred during the 2013 fiscal years. The Commissioners cannot simply reopen the 2013 fiscal budget and pay Appellants what they believe they are due in this matter. If Appellants had submitted their invoices for the expenses that they believed they were entitled to within the time frame set forth by the Commissioners Court, then the Commissioners could have taken the necessary steps to make such payments during the 2013 fiscal year. In addition, even though Appellants had been aware of the Commissioners' position as early as June 18, 2013, the first time they ever alleged that they were statutorily entitled to payment by the county was not until September 16, 2013, the date they filed their Petition for Writ of Mandamus. These unreasonable delays on the part of Appellants put the Commissioners in a position where they could not deal with these expenditures at the time they arose in 2013, and no action could be taken by the Commissioners to amend the original 2013 budget.

Even if this Court determines that Appellants' claims are ripe, a petition for writ of mandamus is not the proper procedure to bring forth such claims. Mandamus relief is only available as to purely ministerial acts. Appellants' claims focus solely upon a decision made by the Commissioners in regard to fiscal policy. The Commissioners have broad discretion in all decisions pertaining to budgetary manners. As such, the act that Appellants challenge is discretionary in nature and not ministerial. In addition, before mandamus relief can be granted, it must be shown by the party filing the petition for writ of mandamus that he has no other adequate remedy at law. In analyzing the specific facts of the matter before this Court, and not comparing this matter to other cases which are factually distinguishable, it is clear that Appellants have an adequate remedy at law by filing suit in district court.

Finally, Appellants' Petition for Writ of Mandamus is barred by both absolute legislative immunity and governmental immunity. Absolute legislative immunity is applicable in this case, because the budgetary decisions made by the Commissioners are the very types of decisions that are purely legislative in nature. Not only is absolute legislative immunity applicable to the Commissioners, governmental immunity also prevents Appellants from bringing a petition for mandamus against the Commissioners. It is obvious that the only remedy sought by Appellants is retrospective, monetary damages. It is a well-established legal principle that where

a claimant seeks retrospective, monetary damages against a county and its agents, the county and its agents are shielded by governmental immunity.

## ARGUMENT AND AUTHORITIES

**I. APPELLANTS' CLAIMS ARE MOOT, BECAUSE THEY ASK THE COMMISSIONERS TO PERFORM AN ACT NOT ALLOWED UNDER THE TEXAS CONSTITUTION AND THE TEXAS LOCAL GOVERNMENT CODE BY REQUIRING THE COMMISSIONERS TO AMEND THE EXPIRED BUDGET FOR THE FISCAL YEAR OF 2013.**

Appellants seek relief in the form of mandamus compelling the Smith County Commissioners' Court to make payments incurred by Appellants during the 2013 fiscal year. Such relief would require the Commissioners to amend the already expired budget for the year 2013, which is not allowed under the Texas Constitution or the Texas Local Government Code. A county's fiscal year consists of a one-year period beginning on October 1 of each year. TEX. LOCAL GOV'T CODE § 112.010(b) (Vernon 2001). During this fiscal year, "[t]he commissioners court may spend county funds only in strict compliance with the budget, except as provided by this section." TEX. LOCAL GOV'T CODE § 111.070(a) (Vernon 2005). In creating the budget, the commissioners court must ensure that "the amounts budgeted in a fiscal year for expenditures from the various funds of the county may not exceed the balances in those funds as of the first day of the fiscal year, plus the anticipated revenue for the fiscal year as estimated by the county auditor." TEX. LOCAL GOV'T CODE § 111.068(b) (Vernon 2013). In an effort to ensure that the balance of funds for the fiscal year is not exceeded during that particular fiscal year, the Texas Constitution

-12-

and the Texas Local Government Code both contain provisions on how and when expenditures in excess of the budget should be handled by the commissioners court.

The Texas Constitution states that "no debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, *at the time of creating the same*, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent (2%) as a sinking fund . . ." TEX. CONST. ART. XI, § 7 (emphasis added). If a debt is incurred in excess of the budget, provisions must be made to compensate for that expense "at the time" that the debt arose during the fiscal year. *Id*. As explained by the Texas Supreme Court:

> At the time the constitution was framed, the history of the country and the state afforded examples of municipal corporations which had become bankrupt through the reckless and extravagant management of their governing bodies; and its framers doubtless had under consideration the evils which result both to the tax-payers and the creditors of such corporation from an unlimited power to create debts.

*City of Terrell v. Dissaint*, 71 Tex. 770, 9 S.W. 593, 594 (1888). A debt which is incurred during the fiscal year and not compensated for at the time it is incurred violates the Texas Constitution. *Texas & New Orleans R.R. Co. v. Galveston County*, 141 Tex. 34, 169 S.W.2d 713, 716 (1943); *City-County Solid Waste Control Bd. v. Capital City Leasing, Inc*., 813 S.W.2d 705, 707 (Tex. App.— Austin 1991, writ denied). In addition, the Texas Local Government Code states that after approving

a budget, the commissioners court "may spend county funds only in strict compliance with the budget, except in an emergency." TEX. LOCAL GOV'T CODE § 111.070(b). In the case of such an emergency, the commissioners court may authorize necessary expenditures only through an "amendment to the *original* budget." *Id*. (emphasis added). In light of the provisions explained in the Texas Constitution and the Texas Local Government Code, it is clear that any payment to the Appellants for their services must have been made to them during the 2013 fiscal year.

Every attempt was made by the Commissioners to resolve any potential debts or expenditures incurred by Appellants during the 2013 fiscal year. The Appellants were made aware on June 18, 2013, that payment for their services would no longer be rendered as of July 18, 2013. Despite having a month to submit the invoices for the expenses they incurred, during which time Appellants could have been paid for their services, Appellants waited until August 26, 2013, and September 10, 2013, to submit their invoices for payment to the Commissioners Court. In addition, beginning June 18, 2013, Appellants had almost three months until the end of the fiscal year on October 1, 2013, to make the Commissioners aware of the fact that Appellants believed that they were statutorily entitled to the expenses they incurred during 2013. Despite having these three months to make the Commissioners' Court aware of their position, Appellants made no mention of their alleged entitlement to

the expenses they incurred until they filed their Petition for Mandamus on September 16, 2013. The district court could not rule on this petition without giving the Commissioners adequate time to answer the petition; thus there was no way for the Court to rule on the petition and possibly grant relief during the 2013 fiscal year. Appellants put the Commissioners in a position where they could not make provisions for the payment of Appellants' expenditures "at the time" the expenses were incurred and could not attempt to amend the "original budget" of 2013. TEX. CONST. ART. XI, § 7; TEX. LOCAL GOV'T CODE § 111.070(b).

Due to Appellants' unnecessary delay in addressing the issue now before this Court, Appellants' remedy requested in their Petition for Writ of Mandamus can only be accomplished by the Commissioners reopening the 2013 fiscal year budget and amending the expired budget to pay for the expenditures incurred during 2013. The Texas Attorney General has already ruled on this very issue of whether a commissioners court may amend the budget for a fiscal year that has already ended. The answer from the Attorney General to this question was a resounding "no."

> *Nor may the commissioners court amend a budget for a fiscal year that has ended* . . . [T]he court's powers and duties relate to the budget adopted for a single fiscal year . . . The commissioners court is authorized to amend the "original budget" and must "file a copy of its order amending the budget with the county clerk." . . . *The "original budget" that may be amended is the budget for the current fiscal year that the commissioners court approved and filed with the county clerk...*

TEX. ATT'Y GEN. OP. NO. GA-0340 (2005) at 5 (internal citations omitted) (emphasis added). The Attorney General in issuing his opinion made sure that there was no confusion as to this issue by stating that his opinion overruled any other prior opinion that stated that an expired budget could be amended. *Id*. at 5 (n.9). Since the only way for Appellants to receive the money for the fees and expenses incurred would be for the Commissioners to amend the already expired budget of 2013, Appellants' claims are moot.

## II. EVEN IF THIS COURT DETERMINES THAT APPELLANTS' CLAIMS ARE RIPE FOR REVIEW, A WRIT OF MANDAMUS IS NOT THE PROPER PROCEDURE FOR BRINGING SUCH CLAIMS.

### A. The actions of the Commissioners were discretionary in nature.

A requirement of bringing a petition for writ of mandamus against a public official is that the act performed must be ministerial in nature. *State ex rel. Vance v. Routt*, 571 S.W.2d 903, 907 (Tex.Cr.App. 1978). The actions performed by the Smith County Commissioners in dealing with budgetary matters are decisions for which they have a broad range of discretion. "The adoption of a policy by a commissioners court is legislative in nature because it reflects a *discretionary*, policymaking decision of general application." *Brown v. Lubbock Cnty. Comm'rs Court*, 185 S.W.3d 499, 505 (Tex. App.-Amarillo 2005, no pet.) (emphasis added); *see In re Perry*, 60 S.W.3d 857, 860 (Tex. 2001). A commissioners court has the statutory authority to set and

control the fiscal policies of the county. TEX. LOC. GOV'T. CODE ANN. §§ 111.031–111.043 (Vernon 1987 & Supp.1983). "Generally, the allocation of county funds is a policy-making determination left to the sound *discretion* of the commissioners court." *Hooten v. Enriquez,* 863 S.W.2d 522, 529 (Tex. App.—El Paso 1993, no writ) (emphasis added); *Weber v. Sachse,* 591 S.W.2d 563 (Tex.Civ.App.—Dallas 1979, writ dism'd); *Commissioners Court of Caldwell County v. Criminal Dist. Attorney, Caldwell County,* 690 S.W.2d 932, 933-34 (Tex.App.—Austin 1985, writ ref'd n.r.e.). A commissioners court has such a high level of discretion in setting the fiscal budget for the county that the commissioners court in essence "acts as part of the legislative branch of state government when it makes a county budget." *Commissioners Court of Shelby County v. Ross*, 809 S.W.2d 754, 757 (Tex.App.—Tyler 1991, no writ); *Randall County Commissioners Court v. Sherod*, 854 S.W.2d 914, 921(Tex. App.—Amarillo 1993, no writ). There is no doubt that the county commissioners have the "power of the purse strings." TEX. ATT'Y GEN. OP. NO. JC-0214 (2000) at 2. "In carrying out the legislative function of budget-making, the commissioners court has significant *freedom of action*." *Id*. at 4. (emphasis added).

The order of the Smith County Commissioners Court that forms the basis for Appellants' claims stems from a policy decision made by the Commissioners

pertaining to the budget for the 2013 fiscal year. In setting this budget and ensuring that expenditures do not exceed available funds, the Commissioners are given a broad range of discretion. In their order, the Commissioners do nothing more than exercise their discretion in limiting the amount of funding given to the 321ˢᵗ Judicial District Court. There is absolutely nothing ministerial about a commissioners court's decision to determine how much funding should go to a particular district court. Such a decision is completely discretionary in nature. Since the matter before this Court centers around discretionary decisions pertaining to the budget set by the Commissioners, mandamus is not appropriate.

B. **Appellants have an adequate remedy at law, other than mandamus, by potentially filing suit in district court.**

Mandamus is an extraordinary remedy and is not appropriate in this matter, because Appellants have an adequate remedy at law by potentially filing suit in District Court. In addition to the requirement that an act be ministerial in nature for mandamus relief to be appropriate, the party seeking such relief must prove that they have no other adequate remedy at law. *State ex rel. Vance*, 571 S.W.2d at 907. Appellants' entire basis for their argument that they do not have an adequate remedy at law stems from the Court of Criminal Appeals decision in *Smith v. Flack* that there was not an adequate remedy at law for criminal defense attorneys who were not paid

-18-

by the county for representation of indigent defendants. 728 S.W.2d 784, 789 (Tex. Crim. App. 1987). First and foremost, Appellants rely upon a case from the Court of Criminal Appeals, despite the fact that the nature of the services they rendered pertained to civil law matters. In addition, the decision in *Smith* had absolutely nothing to do with Section 107.105 of the Texas Family Code dealing with payment for services rendered by appointed ad litem attorneys. Interestingly, Appellants ask this Court to rely upon the factually distinguishable case of *Smith*, when it was the Court of Criminal Appeals in *Smith* that held that the determination of whether an adequate remedy at law exists must be made on a case by case basis. *Id*. at 792.

The rationale behind the decision in *Smith* was clearly unique to that particular case and was based upon policy considerations which are of no consequence to the matter now before this Court. The basis for determining that there was not an adequate remedy at law available to the criminal attorneys in *Smith* was based upon two different policy considerations. First, the Court in *Smith* held that if court-appointed criminal defense attorneys were "forced to pursue the circuitous route of a suit in court to establish [their] claim[s], with the expense and delay necessarily incident to such a course[,] then the important function of court-appointed attorneys in our criminal justice system could be seriously compromised before relief arrives." *Id*. at 793. Such a policy concern is not at issue in the context of family law matters

in Smith County, Texas. The 321st District Court has been assigned *nine* contract attorneys, as opposed to the other district court's *three* contract attorneys, to handle any and all family law matters. The 321st District Court is certainly not in danger of not having enough attorneys for which it can appoint matters to in family law cases.

Secondly, the Court of Criminal Appeals in *Smith* recognized that since the claims that would be brought pertained to representation of criminal defendants, "relators would be forced to seek relief in a criminal law matter before civil law forums, despite the fact that this Court is the final arbiter of criminal law matters." *Id*. Obviously, this concern is of no consequence to the matter now before this Court. The claims made by Appellants center around their representation of clients in civil law matters and potential relief sought by Appellants through suit would be in a "civil law forum." *Id*.

In the absence of such specific policy concerns, the appropriate remedy for a county allegedly not compensating an individual for his or her services is through suit in a district court. *Harris v. Jones,* 8 S.W.3d 383, 386-87 (Tex. App.—El Paso 1999, no writ) (holding that where county auditor refused to sign a check for back pay approved by the commissioners court, such a "case does not fit within the narrow exception to the rule established in *Smith*" and suit in district court was an adequate legal remedy.); *Smith v. McCoy*, 533 S.W.2d 457, 461 (Tex. App.—Dallas 1976, writ

dism'd). The facts in play in the case before this Court do not fall within the "narrow exception" of *Smith*. Since Appellants have an adequate remedy at law through suit at the district court level, they are not entitled to the extraordinary remedy of mandamus relief.

## III. APPELLANTS' WRIT OF MANDAMUS IS BARRED BY LEGISLATIVE AND GOVERNMENTAL IMMUNITY.

### A. The Commissioners are entitled to absolute legislative immunity.

As explained at length above, the actions of the Commissioners in budgetary matters is a discretionary, legislative function. Legislative immunity protects individuals from personal liability for actions performed in their legislative capacity. *In re Perry*, 60 S.W.3d at 860. The purpose of legislative immunity is to prevent lawsuits from interfering with the legislative process. *See Supreme Court v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 731, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980). Courts have extended the legislative immunity doctrine to cover not only state and federal legislators, but also "other individuals performing legitimate legislative functions." *In re Perry*, 60 S.W.3d at 860. "A commissioners court in passing its orders functions in a legislative capacity and is therefore absolutely immune." *Merill v. Carpenter*, 867 S.W.2d 65, 68 (Tex. App.— Fort Worth, 1993, writ denied); *see Consumers Union of the United States, Inc.*, 446 U.S.

-21-

at 731; *Collin County, Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 654 F.Supp. 943, 949 (N.D.Tex.1987). Since the Commissioners were performing a clearly legislative function pertaining to budgetary matters, they are entitled to absolute legislative immunity.

**B.** **The Commissioners are entitled to governmental immunity because there is no question that Appellants seek retrospective monetary damages.**

Governmental immunity operates like sovereign immunity to afford similar protection to subdivisions of the State. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n. 3 (Tex.2003) (recognizing that sovereign immunity and governmental immunity are distinct concepts although courts often use the terms interchangeably). Under the doctrine of governmental immunity, a governmental entity may only be sued with the express consent of the legislature. *See City of Houston v. Houston Firefighters' Relief & Retirement Fund*, 196 S.W.3d 271, 277 (Tex.App.-Houston [1st Dist.] 2006, no pet.). In the absence of such a waiver of governmental immunity by the legislature, a governmental unit possesses both immunity from suit and immunity from liability. *See Texas Dept of Transp v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999); *Catalina Dev., Inc. v. County of El Paso*, 121 S.W.3d 704, 705 (Tex.2003); *Texas Natural Resource Conservation Com'n v. It–Davy*, 74 S.W.3d 849, 853 (Tex. 2002); *Texas Dep't of Parks & Wildlife v. Miranda*, 133

-22-

S.W.3d 217, 224 (Tex.2004); *Channelview Indep. Sch. Dist. v. A.R.C.I., Ltd.*, 199 S.W.3d 556, 559 (Tex.App.-Houston [1st Dist.] 2006, no pet.).

A suit against a governmental official in his or her official capacity is the same as a suit against the governmental body which the official represents. *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 844 (Tex. 2007). Because a suit against a county commissioner is a suit against a county itself, the commissioner, in his or her official capacity, is entitled to the defense of governmental immunity. *Catalina Development, Inc. v. Cnty. of El Paso*, 121 S.W.3d 704, 705 (Tex. 2003). "A county and its agents, when acting in their official capacity, are governmental units and immune from suit." *Travis County v. Pelzel & Assocs., Inc.*, 77 S.W.3d 246, 248 (Tex.2002); *Medina County Commissioners' Court v. Integrity Group Inc.*, 944 S.W.2d 6, 10 (Tex.App.-San Antonio, 1996, no writ) (holding that individual county commissioners were entitled to official immunity from suit when carrying out their functions on the commissioners court).

Such governmental immunity applies to the county and its agents in proceedings seeking a writ of mandamus. "An original proceeding for a writ of mandamus brought in a trial court is a civil action subject to trial substantive issues and rules of procedure as any other civil suit." *City of Seagoville v. Lytle,* 227 S.W.3d 401, 411 (Tex. App.—Dallas 2007, no writ); *see Guthery v. Taylor,* 112 S.W.3d 715,

-23-

720 (Tex.App.-Houston [14th Dist.] 2003, no pet.) *citing Anderson v. City of Seven Points*, 806 S.W.2d 791, 792 n. 1 (Tex.1991). As a result, just as the defense of governmental immunity prevents suit against a governmental entity, it also prevents the issuance of writs of mandamus.

The Texas Supreme Court has consistently held that when the basis for a suit against a governmental entity and its agents is recovery of money damages, governmental immunity is triggered by such suits. In *City of Houston v. Williams*, the Texas Supreme Court dealt with a suit brought against the city of Houston by a group of 321 retired firefighters to recover amounts deducted from payments they received upon termination of employment. 216 S.W.3d 827, 828 (Tex. 2007). Plaintiffs alleged that the city improperly calculated these payments and also incorrectly deducted payments pertaining to overtime. *Id*. The city raised the defense of governmental immunity, but the trial court denied the defense, and the court of appeals affirmed this decision. *Id*. The court of appeals ruled that the city was not entitled to governmental immunity because the suit brought against the city asked for declaratory relief and not money damages. *Id*. The Texas Supreme Court chose to look at the remedy stemming from the suit, rather than the type of suit, in determining if governmental immunity applied: "[P]rivate parties cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money damages . . . as a

-24-

declaratory-judgment claim." *Id*. at 829, *citing Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 856 (Tex.2002).  In focusing on the remedy for plaintiffs, the Texas Supreme Court unequivocally stated, "The only injury the retired firefighters allege *has already occurred*, leaving them with only one plausible *remedy—an award of money damages*." *Id*. (emphasis added). The Court went on to explain that it made no difference that the trial court reserved any determination for money damages to a later date, because '[G]overnmental immunity does not spring into existence when a damages award is finally made; it shields governments from the costs of any litigation leading up to that goal." *Id*.; *see Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 375 (Tex.2006); *IT–Davy*, 74 S.W.3d at 860.

The Supreme Court built upon its decision in *Williams* in *City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009).  The question at issue in *Heinrich* was whether governmental immunity applied to the city and its city actors when the claim alleged that the city actor, "acted without legal authority or failed to *perform a purely ministerial act*." *Id*. at 372 (emphasis added).  In analyzing this type of claim , which is the same claim made by Appellants in the matter before this Court, the Texas Supreme Court held that only those claims for "prospective injunctive relief" are allowed against a governmental entity and its agents. *Id*. at 376.  The Court again emphasized that even if a governmental actor was at fault for not performing a *purely*

*ministerial act*, claims asking for a "*retrospective remedy*" in the form of *monetary damages* were not proper, and the governmental actor was entitled to official immunity. *Id*. (emphasis added).

After the rulings in *Williams* and *Heinrich*, court of appeals throughout Texas began applying the concept of governmental immunity where governmental entities and their actors were sued for money damages for not performing ministerial acts in which no discretion was involved. This very issue was dealt with soon after the Texas Supreme Court's ruling in *Williams* by the Dallas Court of Appeals in the case of *City of Seagoville v. Lytle*, 227 S.W.3d 401 (Tex. App.—Dallas 2007, no pet.). In this case, the court of appeals was faced with a mandamus action brought by a former police captain against the city and various city officials. *Id*. at 409. The basis for such claim was that the city council had not followed the rules set out in Texas Government Code Sections 614.022 and 614.023 pertaining to disciplinary actions against police officers. *Id*. at 411. The court held that these sections of the government code delineated the duty to be performed by the official with sufficient certainty that nothing was left to the exercise of discretion; and thus, compliance with those provisions was a ministerial act. *Id*. Despite determining that the act was ministerial, the court did not stop there in its analysis of whether governmental immunity applied to the defendants. Following the reasoning set forth in *Williams*,

the court of appeals focused upon the actual remedy that was sought by the plaintiff, rather than the fact that the writ of mandamus was couched in terms of injunctive relief. *Id*. The court realized that the cases that had allowed mandamus relief in the form of monetary compensation through back pay and benefits were all done before the Texas Supreme Court's ruling in *Williams*: "However, the opinions of the Texas courts of appeals allowing mandamus relief against a governmental unit that included an award of back pay and benefits, pre-date the recent per curiam opinion in *Williams*, where the Texas Supreme Court implicitly held that claims for monetary damages are barred by immunity unless the legislature expressly waived immunity from suit in clear and unambiguous language." *Id. citing Williams*, 216 S.W.3d at 829. In adhering to *Williams*, the court of appeals held that even when dealing with a governmental entity's exercise of a clearly ministerial act under the Local Government Code, mandamus is not appropriate where the mandamus seeks relief in the form of money damages. "However, the portion of Lytle's petition for mandamus that seeks back pay is a claim for money damages and is barred by governmental immunity. Further, to the extent Lytle's request for mandamus seeks a money judgment for the unspecified, back benefits, that claim is also barred by governmental immunity." *Id*.

The court of appeals in *Hinojosa v. Tarrant County* also dealt with a situation

in which mandamus relief was sought for the action of the county and a county official in the performance of a nondiscretionary act. 355 S.W. 3d 812, 814 (Tex. App—Amarillo 2011, no pet.). Plaintiff worked for the district clerk and based upon a budget reorganization, his position was terminated. *Id*. Rules promulgated by Tarrant County for reductions of force stated that when certain types of employees are considered for layoff, layoff ratings are calculated and the employee with the lowest rating is laid off. *Id*. Despite this rule, it was determined that no layoff rating needed to be calculated before the termination of Hinojosa. *Id*. In response, Hinojosa filed a grievance with the civil service commission who determined that such layoff ratings should have been calculated and *ordered* that back pay be given to Hinojosa. *Id*. Hinojosa petitioned the district court for mandamus in order to force the county and district clerk to follow the civil service commission's order. *Id*. The trial court held that the clerk and the county were entitled to immunity from the requested mandamus relief sought by Hinojosa. Hinojosa appealed the trial court's decision. *Id*. In analyzing the issue of whether or not immunity applied to the county and the clerk, the court cited to the case that Appellants rely heavily upon in their brief, *Vondy v. Commissioners Court*, for the proposition that "a writ of mandamus may issue in a proper case to correct a clear abuse of discretion by a public official." *Id*. at 816 citing *Vondy v. Commissioners Court*, 620 S.W.2d 104, 109 (Tex.1981).

However, the court of appeals also cited to *Lytle* for the fact that "mandamus will not issue to compel payment by the State of money damages." *Id. citing Lytle*, 227 S.W.3d at 411. Just like the court in *Lytle,* the court of appeals in *Hinojosa* turned to the Texas Supreme Court's ruling in *Williams* when dealing with a petition for mandamus seeking monetary relief. "Of relevance here, the court in *Williams* noted, "[t]he only injury the [the claimants] allege has already occurred, leaving them with only one plausible remedy—an award of money damages." *Id. citing Williams* 216 S.W.3d at 829. Even though the county and it's officials were faced with an *order* to pay benefits to the plaintiff, not following such order still did not warrant mandamus, because "[n]otwithstanding the nature of the remedy employed, this was simply a claim for payment of money damages asserted against a governmental entity and its officer." *Id*. at 817. As such, the court concluded that the county and the clerk were entitled to immunity and denied plaintiff the requested mandamus relief. *Id*. at 818.

In no case is the issue of immunity from mandamus relief more applicable to the matter before this court, than the case of *Kaufman County v. Combs*, 393 S.W.3d 336 (Tex. App.—Dallas 2012, pet. denied). This matter originally arose from a guardianship proceeding in which the plaintiff, Combs, was appointed as an attorney ad-litem and guardian of the estate for an adult who was incapacitated. *Id*. at 339.

In connection with these services, Combs filed an application for fees and expenses stemming from her service as an ad litem and guardian with the guardianship court. *Id*. The guardianship court issued a written order that Combs be paid $143,168.95 in expenses for her services as an ad litem and guardian. *Id*. at 339-40. Combs submitted the invoice to the county auditor for approval. *Id*. at 340. The auditor did not present the invoice to the commissioners court, because she did not receive backup documentation from Combs. *Id*.

Combs filed suit against the County judge, commissioners, and Auditor in their official capacities and also sought mandamus relief requiring that the county pay the expenses she incurred as an ad litem and guardian. *Id*. Comb's basis for such mandamus relief requiring the commissioners court to pay for the expenses was Section 669 of the Texas Probate Code. *Id*. This section entitled "Costs Against Guardianship" provides that the cost of the proceeding, including the cost of the guardian ad litem or court visitor, "shall be paid out of the guardianship estate, or, if the estate is insufficient to pay for the cost of the proceeding, the cost of the proceeding *shall be paid out of the county treasury*." TEX. PROB. CODE ANN. § 669(a) (West 2003). The trial court originally dismissed the claims based upon the argument that the court lacked subject matter jurisdiction to enforce the fee order, because the guardianship court never obtained subject matter jurisdiction over the underlying

guardianship. *Combs*, 393 S.W.3d at 340. The court of appeals reversed the decision of the trial court and remanded the case to the trial court. *Id.* At the trial court level, Combs raised several issue all based upon the mandatory "shall" language in 669(a) of the Probate Code. Combs filed, "Plaintiff's Third Amended Petition For Declaratory Judgment, Injunction, and Writ of Mandamus." *Id.* at 340 (n.5). Count one of her petition was entitled, "Violation of the 1996 Order, the Fee Order and Texas Probate Code § 669(a)." *Id.* Under count one, Combs alleged *violations of the fee order and section 669(a)* of the probate code. *Id.* (emphasis added). Count two, entitled "Declaratory Relief," requested a declaratory judgment "that the Fee Order (a) is binding upon Kaufman County without further review, consideration, decision, action or vote by the Auditor and/or the Commissioners Court, and (b) *must be paid by Kaufman County pursuant to [section 669] and/or otherwise...*" *Id.* (emphasis added). Count seven, entitled "Writ of Mandamus," sought a writ of mandamus compelling appellants *"to do the ministerial act required by...Tex. Probate Code § 669(a)..."* *Id.* (emphasis added). Based upon these arguments pertaining to the "shall" language in section 669(a), the trial court rendered a judgment in favor of Combs in the amount of $143,168.95 which was the full amount of the expenses occurred plus interest and attorney's fees. *Id.* at 341. Subsequent to this ruling, the County and the county officials who were sued in their official capacities appealed

this decision arguing that they were entitled to governmental immunity. *Id*. at 342. The fact that the code section stated "*shall* pay out of the county treasury" was of no importance to the court of appeals. Rather the Dallas Court of Appeals started its analysis just like every other court faced with mandamus relief in the form of monetary damages, brought against a county and county officials, by turning to the Texas Supreme Court's ruling in *Williams:* "Governmental immunity is not waived for lawsuits seeking retrospective monetary relief and private parties cannot circumvent the government entity's immunity by artfully characterizing a suit for money damages as a declaratory judgment claim." *Id*. at 343 *citing Heinrich*, 284 S.W.3d at 368-71; *Williams*, 216 S.W.3d at 828–29. Combs argued, in the exact same manner as Appellant in this case, that the county and its agents were not entitled to immunity because her suit and request for mandamus relief was based upon "seeking relief against government actors who allegedly violated section 669(a) by failing to perform the purely ministerial act of paying the fee order without any additional review, action, or vote by the county auditor or commissioners court." *Id*. The court turned to *Heinrich* in approaching this particular argument made by Combs, which is the exact same argument made by Appellants in the matter now before this Court:

> By her lawsuit, Combs asserts section 669(a) of the probate code requires the County to pay the 2002 fee order. Notwithstanding her requests for declaratory and mandamus relief, Combs's claim is simply

for payment of money damages asserted against a governmental entity and its agents. The only injury that Combs has alleged, failure of the County to pay the full amount of the fee order without further review, has already occurred, leaving her with only one plausible remedy-an award of money damages... *Heinrich* makes clear that only prospective and not retrospective relief is available for such a claim....Specifically, Combs is not seeking a right to payments from the County in the future but payment from the County for fees that she was awarded in 2002 when the fee order was rendered...Because Combs sought no prospective relief, her declaratory judgment claims as well as her request for a writ of mandamus are barred by governmental immunity...

*Id*. Appellants' Brief leaves absolutely no doubt that the Appellants are asking for retrospective monetary relief in the form of payments for services rendered in the past:

> **The relief sought.** This Court should reverse and remand, with instructions that the district court: (1)calculate what the Appellants are owed, in accordance with the invoices submitted to the County Auditor by the 321st District Court; and (2) issue a writ of mandamus compelling the Smith County Commissioner's Court and its members to direct payment to appellants for the amount owed.

*Appellants' Brief* at 4. The relief sought by Appellants is the very essence of retrospective monetary relief; the very relief that is not allowed under the doctrine of governmental immunity as explained by the Texas Supreme Court and various court of appeals, and *Combs* in particular. Just like Combs, Appellants performed a service as an attorney and asked for compensation from the court. Just like Combs, a court issued an order authorizing payment for Appellants for the services rendered as

-33-

attorneys. Just like Combs, Appellants rely upon a statute which states that the services "shall" be paid from county funds as the basis for their writ of mandamus. Jut like Combs, Appellants argue that this was a ministerial act for which the county commissioners were not entitled to governmental immunity. And most importantly, just like Combs, Appellants are asking for retrospective monetary relief. Considering the analogous facts between *Combs* and the case now before this Court, Appellees urge this court to follow the line of reasoning in *Combs* and all the cases upon which that reasoning relies, and deny Appellants writ of mandamus which seeks nothing more than retrospective money damages.

## CONCLUSION AND PRAYER

Appellants' claims against the Commissioners are moot because they require the Commissioners Court to perform an action not allowed under the Texas Constitution or the Texas Local Government Code by asking them to amend the expired 2013 budget in order to compensate Appellants for expenses they incurred during the 2013 fiscal year. Even if this Court determines that Appellants' claims are ripe, a petition for writ of mandamus is not the proper procedure to bring forth such claims. Appellants' claims focus on the Commissioners' discretionary actions in budgetary decisions; and thus, such decisions are not ministerial in nature. In addition, due to the nature of Appellants' claims, Appellants have a adequate remedy

at law by bringing suit in a district court. Finally, Appellants' Petition for Writ of Mandamus is barred by absolute legislative immunity, because the Commissioners' actions pertaining to setting fiscal policy is considered a legislative act. Even if the Commissioners are not entitled to absolute legislative immunity, they are most certainly entitled to governmental immunity, since Appellants seek retrospective monetary damages.

Respectfully submitted,

**FLOWERS DAVIS, P.L.L.C.**
1021 ESE Loop 323, Suite 200
Tyler, Texas 75701
(903) 534-8063
(903) 534-1650 Facsimile

**ROBERT S. DAVIS**
State Bar No. 05544200
rsd@flowersdavis.com

**ATTORNEYS FOR APPELLEES SMITH COUNTY COMMISSIONERS COURT; JOEL P. BAKER; CARY NIX; JEFF WARR; JOANN HAMPTON; AND TERRY PHILLIPS**

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4, I certify that this brief contains no more than 7,560 words.

**Robert S. Davis**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing instrument was served upon all counsel of record in the above entitled and numbered cause on March 2, 2015, in the following manner:

 X   Via CM/RRR: 7013 3020 0001 2074 4226

**Robert S. Davis**